Afterthe hearing, and after argument, tffe chancellor made the following decree :
*131 This is an application to the count to relieve the,complain ant irons a judgment at law, which has been oh-tamed against him, as above stated: And, indeed, tore-lievo him from a contract, by which lie became the purchases' of a house and lot in Columbia, for which he gave his notes, on which the judgment was obtained. The relief is sought on several grounds.
First, — That the defendant had not a good title in him, so as to insure a perfect and indefeasible title to the complainant.
Second, — .That defendant has delayed very long in making out or disclosing his title to the complainant^ who, therefore, is entitled to this relief.
Third., — That the property is encumbered by judgments, which render the enjoyment of the estate precarious.
The complainant also states, that the sale of the house, made under the judgment at law of this defendantt, was •injured by the improper conduct df the defendant’s agent, in refusing to shew the titles of the vendor; by which means purchasers were afraid to engage in the purchase, and the defendant was enabled to become tlic buyer of the property, at less than a fourth of its value $ and he seeks relief from that sale. And he also seeks reimbursement ibr large and expensive improvements put on the lot.
I have considered the circumstances of this case, and the arguments of counsel. It was argued by the solicitors for the complainant, very much as il this was a case resting solely in contract, and as if the vendor was now asking the aid of the court to carry that contract .into specific execution; in which case, the court exercises a high legal discretion, and either grants or refused that aid, according to the circumstances and thecquity of the case. But, that is by no means the real situation of the. parties, or of the transaction. Upon the agreement to purchase the house and lot in question, the purchaser, Mr. Roach, was satisfied to take a bond from Mr. Rutherford, the seller, dated the 19th June, 1806, by which he engaged, whenever the'sum of §1,300 was paid to him by Mr. Roach, to make good and sufficient titles to- *132 the Louse and lot, to the said Abraham Roach or Lis re-presentativcs : And Mr. Roach gave bis notes of band, for the amount of the purchase money, payable at fixed periods, in the ordinary mode of giving notes. In pursuance of this agreement, Sir. Roach was put into possession of the bouse and lot, winch he has held and cn-joyed peaceably ever since, and put great improvements thereon. And by the bond which he took from Mr. Rutherford, it appears that he was to pay the money before lie was to have titles made to him for the house raid lot. That Money not having been paid at the time the notes fell due, the same., after some indulgences, were placed in suit, and judgment recovered upon them, against Sir. Reach j to avoid which judgment and a sale made thereunder, and to be relieved from the contract, as before stated, Mr. Iloach comes to this court, This was certainly an incautious bargain, by which he put himself very much in the power of the other party; anil placed himself in a position far different from that wherein the vendor is obliged to come to the court to ask its aid, to oblige the purchaser to go into a specific execution of the, contract. Yv'lierc the seller is obliged to come to the court for aid, a number of principles and rules are brought into operation, to protect the purchaser and to secure him a good title ; but, a matc-rial dltlbrcnce is made between establishing and rescinding an agreement. In the former case, a purchaser may demand an abstract of the title, and the court will at least nee that he has a good title, to amoral certainty, before, it will force him to ¡icccptthc tille and pay his money. Eat here, all is i’cvei'sod $ the party gave positive notes for ¡he money, and stipulated that ho should pay the mo-r-ey, before he, should have a title.
It is true, nevertheless, that the court will, in a clear and strong case, protect, a purchaser against the payment of his bond for the purchase money, <;r will even assist him in recovering it hack, if already paid, especially if no conveyances'he* yet executed'5 provided it shall be made to appear that the vendor cannot make Lins a good title: or he may, if he has only made a deposit of part *133 «rtlio purchase money, recover back that deposit, even at jaw. But in sack case, it is not sufficient to shew that the title lias been deemed bad by conveyancers, but lie must prove the titles bad. See Sagden, 157 ; and 4 Espin. Rep. case 221, Camfield vs. Gilbert.
It was objected, on the other hand, by the defendant, that the complainant could not come to this court for relief, because he might have set up the pleas, which forms the foundation of his complaint in this bill, as a defence to the suit at law. That, however, is not certain, for it has not yet been settled, whether a court of law will enter into equitable objectisns to a title, whore a purchaser is plaintiff.* And where the vender is plaintiff at law, to recover the purchase money from the vendee, the only ground on which it is said, that a court of law may in such action, take cognizance of equitable objections to a title, is, that as the vendor brings his action on the contract, and on the equitable circumstances between the parties, therefore, the equitable defe. ee may be set up. This, however, is doubtful ; for it rests on the authority of a single modern decision, made by the court of king’s bench, in Shaw vs. Jackman, 4 East. 201. But if the point were more settled, it would not apply to this case, for the plain tiff at law, Rutherford, who is defendant iu' this suit, did not sue at law on the equitable circumstances between the parties. He brought a suit upon plain notes of hand, which did not there open the contract at all. I do therefore think, that as the complainant’s remedy would have been very doubtful at law, he is not precluded from coining here for relief; mid this court would give him relief, if lie made out a proper case.
This has been attempted, and the complainant’s counsel have relied on various grounds to support such a case.
It was insisted that the defendant ought to have made out a good title, and to have shewn it to the complainant : that his refusal or neglect lo do so, entities the *134 complainant to relief; that even if lie could make out a good title, lie comes too late for specific execution, after Biich a great length of time. He ought to have done it in a reasonable time ; and that time is essential in such contracts. That the title, as at last made out, is objectionable, as the deed from Rush to Rutherford, has never been recorded, as required by law; and as there was an outstanding judgment which bound the land in favor of Rush, for $250 and costs.
The defendant, in answer to these objections, insists, that the complainant made no such defence to the suits brought long after the contract on the notes for the purchase money ; but confessed judgment thereon, and that m en when be hied a bill in equity upon another point, on this contract, which was dismissed, he made no mention of the present subject of complaint. And to be sure, this conduct on the part of the complainant furnishes a-strong presumption that he liad been satisfied of the goodness of the title j which opinion is greatly strengthened by the defendant’s swearing in his answer, (which is uncontradicted in this point) that at the time of entering’ into the contract, ho exhibited his title, to the complainant, part of which is noted and set forth in tlic bond which be gave to make good titles ; with which the complainant after a full knowledge thereof, and of ail the circumstances truly set forth and disclosed, was satisfied and entered freely and voluntarily into the contract; and did then take possession by the defendant’s permission, of the house and lot, which he has held and kept ever since, and received the rents and profits undisturbed, and without any claim by any person whatever.
Tills certainly is a very conclusive answer to the complainant; for as the title was exhibited to him, and lie was so well satisfied as to give positive notes for the money, and afterwards to .confess judgment on them, and to take and bold possession for many years, and to put great improvements on the lot, it is extraordinary that he should now attempt to setup objections, which lie ‘.>oyht to have dene >ug before. The court must listen ¿lb suspicion to cn'.h objections gfter such a lapse of *135 íj?ne. The decided cases are strong on this point, ami establish that where the vendee proceeds in the treaty for the parchase, after ho is acquainted with the title and the nature of the tenure, and does not object to it, ho will be. bound to fulfil his contract. Sec 4 Bro. C. C. 494, Fordyce vs. Ford ; 6 Vez. jr. 670 : and 10 Vez. jr. 508, and 1 Vez. jr. 221, Colcraft vs. Roebuck.
The takingpossession and keeping it for so many years, is greatly relied upon by the court in such cases; it is even deemed a waiver of objections to the title. See 12 Vezey, 25 6, Fludyer vs. Cocker. And this will be more relied upon in this country than in England, because it not only operates as a waiver of objections to the title, but as a positive title after the lapse of five years. For our statute of limitations fixes five years instead of sixty, as in England ; and it operates as a bar to the right, and not merely to the remedy,j as it does in England. Now the complainant has been in quiet and entire possession himself of the property for more .than five years, under the permission and the consent of the defendant, who had held it sometime before. If -it be answered, that this may not be an indefeasible title, as there may be infancy or coverture, or absence from the state, which would prevent the statute of limitations from being operative, the reply is conclusive: It is incumbent on you who object this, to prove it, after such circumstances of waiver, on your part, and of complete undisturbed enjoyment by you for the full time required by the statute.* Upon this ground, therefore, I do not consider’ the purchaser, who is the complainant, after long acquiescence and possession, as entitled to relief in this court, to get rid of a contract under such circumstances. But, in reality, there does not seem to be. any just ground to complain of the title itself, as deduced by *136 defendant and stated to complainant. • it is deduced regularly from the commissioners of Columbia, to Mr, Rutherford. Every link in the chain seems to be com- ■ * plctc. And if the defendant had been in default as to his title, as represented by the complainant, still, according to the decided cases, the defendant might and would he at liberty to perfect his title, at the time of the decree, so as to have the benefit of his contract. For the direction of the court to tiie master, is to enquire whether the seller can, not whether lie could, make a title at the time of executing the agreement. — See Sugden, 250 ; 2 P. Williams 629, Langford vs. Pitt; 6 Vez.jr. 646, Jenkins vs. Hill; 7 Vez.jr. 268, Seton vs. Slade ; 7 Vez. jr. 202, Wynne vs. Morgan ; 10 Vez. 294 ; and this is the rule at law too, 1 Rep. Cases, 184. And these cases operate, even where there had been a limitation of time to complete the contract: for time is not generally deemed essential in such cases, though it may become so, if evident disadvantages arise to the purchaser from the delay. See 7 Vez.jr. 265, Slade vs. Slade; 1 Atk. 12; 4 Vez. 689 ; 4 Bro. 469. In this case, the purchaser has no pretence for he stipulated for no time; nay, agreed to postpone his-having any title till he paid the purchase money' — and the delay of that has been his own fault.
An objection was relied on, that the deed from Rush to Rutherford has never been recorded ; and that it exposes the purchaser to inconveniences from double sales, and from judgments against Rush. Undoubtedly it was a neglect in Rutherford not to have recorded this deed, and might have exposed the purchaser to serious inconveniences. . But the conduct of the purchaser in so long waiving all objections to the title, diminishes his right to object at this time, and the strength of his possession takes away the apprehension of his suffering any ill consequences. Besides, the complainant has not shewn that-these effects have followed. The court will enquire whether any other deed from Rush is recorded, and -order-, this deed to be recorded immediately.
As to the judgment on record againt Rush, it would, if it still bound this land, he a subject of compensation ’ *137 sind deduction, and not of recision of the contract ,*— for it must bo indifferent to the purchaser to whom he pays bis money, provided he is not asked to pay more than tlie amount of his purchase. But according’to the cases decided at law, the possession of a bona ñde purchaser, will protect, under the statute of limitations, the holder of real estates as w ell as personal, against the operation of judgments. In this case, I presume the operation of the judgment in question is barred by the statute, upon the possession proved. But some precaution may be used to make the purchaser secure beyond all doubt.
The complainant also sought relief against the sale of the house and lot, which was bought in very low by the defendant, at the sale under his judgment and execution founded on the notes. I am not sure, that the evidence would have borne me out in setting aside the sale in this case. There does not appear to have been any fraud intended by the friend or agent of Mr. Rutherford. But, as the salé was made at a price very greatly below the value, and as that effect may have been produced by the extreme caution of the friend of Mr. Rutherford, which made him reluctant to produce the title deed from Rush to Rutherford, which might have discouraged purchasers, I am very glad that the defendant has offered to rescind the sale, and to give the complainant an opportunity of obtaining a fairer price for the property, if he should not he able to complete his payments, so as to prevent a resale. I gladly lay hold of this concession, which is just and proper in itself, and indicates a liberal temper in the defendant towards the complainant, to -set aside the sale which has been made of the house and lot under the judgment and execution.
It is therefore ordered and decreed, that it be referred to the commissioner to enquire and report if there be any conveyance on record, or mortgage of the house and lot in question, from Mathias Rush to any other person than to Mr. James Rutherford ; and also, if there be no other judgment on record against the said Rush, than that in favor of Patton, for the sum of § 250 and *138 coste of suit. And that upon its appearing that there is such conveyance or mortgage, that the defendant do deposit the conveyances which form his title to the said house and lot, properly recorded, or certified copies of such as are not in his possession, in iho hands of the commissioner, to be kept in safety by him until the complainant shall pay the amount of the purchase money, due by Abraham Roach to defendant, James Rutherford ,• and thereupon, to be delivered to the complainant.
Mr. Starke for complainant.' — Egan for defendant.
That with respect to the judgment standing against the said Mathias Rush, and supposed to bind the said bouse and lot, it is ordered and decreed, that the complainant shall be at liberty to retain the amount appearing to be due on the face of the judgment and the costs, out of the purchase money, for the space of two years; and if, in the mean time, the same shall be revived, the complainant may apply so much of the purchase money to pay off said debt.
It is also further ordered and decreed, that the sale heretofore made of the said house and lot,, under the judgment and execution of the said defendant, be set aside; and that upon the delivery of the title deeds by the defendant to the commissioner, for the complainant as above directed, the injunction be dissolved, and the defendant be at liberty to proceed to á resale of the house and lot under his judgment at law. The complainant to pay th.e costs of suit.
HeNky W. Desaussu.ee.
An appeal was made from this decree; but it was af-terwards abandoned.

 The only two decisions on the point, ave, one made by lord Kenyon, 8 Term, Rep. 516, that the judges at law could not take notice of an equity title; and the other by lord Alva dy, 3 Bos. and Pull that the purchaser might recover his deposit at la-v, on equitable objections to the t-itlo?

 I wish to avoid being misunderstood on this subject. I by nor means mean to say, that the court would he disposed to oblige the pur-, chaser to take a title, depending wholly on the statute of limitations^ where the vendor came to the court, to compel the purchaser to a spiy qifie execution. of a «ontrset. But that is not the case here.